### In re ANNEXATION OF CERTAIN TERRITORY TO The CITY OF MUNCIE, INDIANA,

City of Muncie, Appellant–Respondent,

v.

Certain Halteman Village Section I and Brewington Woods Landowners, Appellees–Petitioners.

No. 18A02–0901–CV–89.

Court of Appeals of Indiana.

Oct. 6, 2009.

Frank E. Gilkison, Daniel J. Gibson, Beasley & Gilkison LLP, Muncie, IN, Attorneys for Appellant.

Nicholas K. Kile, Barnes & Thornburg LLP, Bryan H. Babb, Stephen C. Unger, Bose McKinney & Evans LLP, Jo Angela Woods, Indiana Municipal Lawyers Association Inc., Indianapolis, IN, Douglas C. Haney, City of Carmel Department of Law, Carmel, IN, Douglas D. Church, Church Church Hittle & Antrim, Fishers, IN, Attorneys for Amici Curiae City of Carmel, Town of Fishers, and Indiana Municipal Lawyers Association.

David W. Stone IV, Stone Law Office & Legal Research, Anderson, IN, Attorney for Appellees.

## OPINION

BAKER, Chief Judge.

Appellant-respondent City of Muncie (Muncie) appeals the trial court's order

granting the remonstrance petitions of appellee-petitioners (collectively, the Landowners) and declaring Muncie's Ordinance Numbers 11–07 and 12–07 (collectively, the Ordinances) to be invalid. Muncie argues that the trial court erred by finding that it failed to meet its statutory burden contained within Indiana Code section 36–4–3–13 and by finding that the Landowners met their burden contained within the same statute. Finding that Muncie met its burden and the Landowners failed to meet theirs, we reverse.

### FACTS

Brewington Woods (Brewington) and Halteman Village Section I (Halteman) are residential neighborhoods located on the outskirts of Muncie. Both areas are more than 25% contiguous to Muncie's existing corporate limits. Brewington has an area of 37.2 acres and an estimated population of 133; Halteman has an area of 62.4 acres and a population of 225.

On May 7, 2007, the Muncie Common Council (the Council) adopted Fiscal Plans for the annexation of Brewington and Halteman and introduced ordinances to accomplish the annexation. On September 10, 2007, the Council adopted the Ordinances. Ordinance 11–07 annexed Brewington and Ordinance 12–07 annexed Halteman to Muncie.

On December 18, 2007, Brewington landowners filed a petition for remonstrance against Ordinance 11–07, and on the same date, Halteman landowners filed a petition for remonstrance against Ordinance 12–07. The cases were consolidated, and a bench trial was held on November 20 and 21, 2008. On January 5, 2009, the trial court granted the Landowners' respective petitions, finding and concluding, in pertinent part, as follows:

14. The City retained HNTB Corporation to prepare fiscal plans for [Brewington and Halteman] in early 2007.

* * *

21. That HNTB did not take into consideration any property tax caps when developing the fiscal plans.

* * *

26. That the City of Muncie has not taken any steps to amend the fiscal plans for the neighborhoods to reflect the property tax caps adopted into law.

* * *

28. That the fiscal plans do not account for reduction of revenue that the City of Muncie will experience as a result of property tax caps.

29. That the fiscal plans did not account for the loss of revenue to be received by the City of Muncie when determining the cost of providing services to [Brewington and Halteman] and the methods of financing said services.

* * *

34. That there currently exists an insufficient number of fire hydrants in [Brewington and Halteman] for the City of Muncie to provide similar fire protection service as it does to other areas within the City of Muncie's boundaries.

* * *

36. That the City of Muncie will have to install at least three additional fire hydrants in [Brewington and Halteman]....

* * *

39. That the City of Muncie has no control over the installation of fire hydrants as the fire hydrants are installed by Indiana–American Water Company.

40. That the City of Muncie cannot guarantee that the fire hydrants will be installed within one year as Indiana–American Water Company is the entity that installs the fire hydrants.

41. That the City of Muncie will provide fire protection services to [Brewington and Halteman] by using pumper trucks through a relay method for transporting water (hereinafter "Relay Method") from a hydrant to the burning structure until fire hydrants are installed in the neighborhoods.

42. That the Relay Method of fire fighting is not a fire fighting service provided in a manner equivalent in standard and scope of the fire fighting service as the City of Muncie provides to other areas within the City of Muncie.

* * *

44. That the fiscal plans do not account for any additional day-to-day expenses that may be incurred by the City of Muncie to provide services to this area as said expenses were categorized by the City of Muncie's department heads as "insignificant."

* * *

57. That there are land owners in [Brewington and Halteman] that are paying less than one percent (1%) of their assessed values in real estate taxes.

58. That the land owners would be required to pay more taxes in order to reach the one percent property tax cap maximum when annexed by the City of Muncie.

59. That there are land owners in [Brewington and Halteman] that have fixed incomes and any increased property tax payments required by the annexation would have a significant financial impact on them.

* * *

... THE COURT HEREBY FINDS AS A MATTER OF LAW AS FOLLOWS:

* * *

9. That the fiscal plans do not account for any additional day-to-day expenses that may be incurred by the City of Muncie to provide services to [Brewington and Halteman] pursuant to Indiana Code § 36–4–3–13(d)(1).

* * *

20. That the City of Muncie has not taken any steps to amend the fiscal plans for [Brewington and Halteman] to reflect the property tax caps adopted into law....

* * *

23. That the fiscal plans did not account for the loss of revenue to be received by the City of Muncie [as a result of property tax caps] when determining the cost of providing services to [Brewington and Halteman] to the neighborhoods and the method of financing said services.

\* \* \*

31. That the City of Muncie cannot provide fire service to the area proposed for annexation in a manner consistent with the standard and scope of services provided to the City of Muncie as a whole as required by Indiana Code § 36–4–3–13(d)(4).

\* \* \*

42. That the land owners have shown that at least sixty-five percent of the owners of land in [Brewington and Halteman] continue to oppose the annexation as required by Indiana Code § 36–4–3–13(e)(2)(D).

\* \* \*

44. That the City of Muncie failed to meet its burden of proof with respect to its compliance with Indiana Code § 36–4–3–13.

45. That the land owners have met their burden to show they have met the requirements of Indiana Code § 36–4–3–13(e).

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the remonstrance petitions are sustained and [the Ordinances] are not valid.

Appellant's App. p. 28–33. The City now appeals.

**1.** Subsection 13(b) provides as follows:

The requirements of this subsection are met if the evidence establishes the following:
(1) That the territory sought to be annexed is contiguous to the municipality.
(2) One (1) of the following:
(A) The resident population density of the territory sought to be annexed is at least three (3) persons per acre.

## DISCUSSION AND DECISION

### I. Standard of Review

When, as here, the trial court enters findings of fact and conclusions of law, "we review issues of fact for sufficiency of the evidence and look to the record only for evidence favorable to the judgment." *City of Fort Wayne v. Certain Southwest Annexation Area Landowners*, 764 N.E.2d 221, 224 (Ind.2002). We set aside findings and judgments only when they are clearly erroneous. *Id.* As always, we review questions of law de novo. *Id.*

We conduct our review bearing in mind that annexation "is essentially a legislative function." *Id.* Therefore, courts play only a limited role in annexations and must afford the municipality's legislative judgment substantial deference. *Id.* "Therefore, a trial court should not 'audit' a challenged fiscal plan. Rather, it should focus on whether that plan represents a credible commitment by the municipality to provide the annexed area with equivalent capital and non-capital services." *Id.*

### II. Prerequisites for Annexation

Indiana Code section 36–4–3–13 lists the prerequisites for annexation, and the municipality bears the burden of showing that it has complied with these statutory conditions. *City of Carmel v. Certain Southwest Clay Twp. Annexation Territory Landowners*, 868 N.E.2d 793, 797–98 (Ind.2007). If the municipality meets the requirements of subsections 13(b)[1] or 13(c)[2] and subsection 13(d), the court must

(B) Sixty percent (60%) of the territory is subdivided.
(C) The territory is zoned for commercial, business, or industrial uses.
I.C. § 36–4–3–13(b).

**2.** Subsection 13(c) provides as follows:

The requirements of this subsection are met if the evidence establishes the following:

order the annexation to proceed, subject to the remonstrators' ability to establish all of the grounds listed in subsection 13(e). *City of Carmel,* 868 N.E.2d at 798.

Here, the parties stipulate that Muncie met the requirements of subsections 13(b)[3] and 13(c); therefore, we will focus our analysis on subsection 13(d), which provides as follows:

(d) The requirements of this subsection are met if the evidence establishes that the municipality has developed and adopted a written fiscal plan and has established a definite policy, by resolution of the legislative body as set forth in section 3.1 of this chapter. The fiscal plan must show the following:

(1) The cost estimates of planned services to be furnished to the territory to be annexed. The plan must present itemized estimated costs for each municipal department or agency.

(2) The method or methods of financing the planned services. The plan must explain how specific and detailed expenses will be funded and must indicate the taxes, grants, and other funding to be used.

(3) The plan for the organization and extension of services. The plan must detail the specific services that will be provided and the dates the services will begin.

(4) That planned services of a noncapital nature, including police protection, fire protection, street and road maintenance, and other noncapital services normally provided within the corporate boundaries, will be provided to the annexed territory within one (1) year after the effective date of annexation and that they will be provided in a manner equivalent in standard and scope to those noncapital services provided to areas within the corporate boundaries regardless of similar topography, patterns of land use, and population density.

(5) That services of a capital improvement nature, including street construction, street lighting, sewer facilities, water facilities, and stormwater drainage facilities, will be provided to the annexed territory within three (3) years after the effective date of the annexation in the same manner as those services are provided to areas within the corporate boundaries, regardless of similar topography,

---

(1) That the territory sought to be annexed is contiguous to the municipality as required by section 1.5 of this chapter, except that at least one-fourth (1/4), instead of one-eighth (1/8), of the aggregate external boundaries of the territory sought to be annexed must coincide with the boundaries of the municipality.

(2) That the territory sought to be annexed is needed and can be used by the municipality for its development in the reasonably near future.

I.C. § 36–4–3–13(c).

**3.** The Landowners argue that we should reconsider our holding in *Matter of Annexation*

*Ordinance No. X–07–91,* 645 N.E.2d 650, 656 (Ind.Ct.App.1995), *trans. denied,* that so long as there are at least three residents per acre in an area to be annexed that the municipality's desire to increase tax revenue is not relevant. Because the areas in this case "barely" satisfy the population density requirement, appellee's br. p. 14, the Landowners ask that we reconsider this long-standing rule, notwithstanding our recent decision declining to do precisely that. *West v. City of Princeton,* 901 N.E.2d 1141, 1149 (Ind.Ct.App.2009). We decline to revisit this well-established rule.

patterns of land use, and population density, and in a manner consistent with federal, state, and local laws, procedures, and planning criteria.

The trial court found that the Ordinances and Muncie's fiscal plans failed to meet subsection 13(d) in three ways: (1) the failure to take the loss of revenue as a result of the property tax cap into account; (2) the failure to account for and provide cost estimates of planned services to be furnished to the annexed territories; and (3) the failure to prove that fire protection will be provided to the annexed territories in a manner equivalent in standard and scope to that offered in Muncie within one year after the effective date of the annexation.

### A. Property Tax Cap

■ The trial court found the fiscal plans to be deficient because Muncie failed to "account for reduction of revenue that the City of Muncie will experience as a result of property tax caps" and further failed to amend the fiscal plans or supplement the plans at trial to reflect the tax caps as provided for in 2008 House Enrolled Act 1001.[4] Appellant's App. p. 29.

Muncie acknowledged at trial that it would almost certainly experience a decrease in revenue as a result of the property tax caps. But Muncie's controller, mayor, and fiscal plan preparer all testified that they had no way at the time of trial to make a reasonably accurate estimate of the precise effect of the tax caps on the city or to assess the potential effect on the level of services that the City could provide. Furthermore, Muncie presented evidence that services would be provided regardless of the legislative change. Tr. p. 125.

Subsection 13(d) merely requires that noncapital services be provided in a manner equivalent in standard and scope to those provided within the corporate boundaries. And the only evidence offered at trial on this issue establishes that, whatever the shortfall may be and whatever restructuring is required, the services provided to the annexed territories would be provided in an equal manner to those offered to Muncie. In other words, as put by Muncie, "if the areas become a part of the City[,] they will share equally in any decrease or increase in the level of services provided in the future." Appellant's Br. p. 19.

Under these circumstances, we cannot conclude that the consideration during trial of the possible effects of the property tax cap was a requirement of subsection 13(d). We also note that we agree with amici that "[r]equiring a municipality to make detailed and specific updates to its fiscal plan during trial in response to indirect legislative changes constitutes an impermissible judicial audit." Amici Br. p. 4. As our Supreme Court has cautioned, "[s]ection 13(d) does not speak in terms of projections, forecasts, or inflated costs; *it merely requires cost estimates.*" *City of Fort Wayne,* 764 N.E.2d at 225 (emphasis added). We find, therefore, that the trial court erred by concluding that Muncie failed to meet its statutory burden to provide cost estimates based on its failure to amend the fiscal plans during trial.

### B. Cost of Planned Services

■ The trial court also found that Muncie failed to meet its statutory burden because it did not include estimated costs for noncapital services, including police, fire, and street department services. The Landowners argue that this omission must mean "that the City plans to make no

4. Now codified at Indiana Code section 6– 1.1–20.6–7.5.

police patrols in the areas, provide no road maintenance, no snow plowing and [no] fire department runs." Appellees' Br. p. 8.

The fiscal plans and the undisputed evidence at trial established, however, that there will be essentially no additional cost to Muncie as a result of the provision of noncapital services to the annexed areas. Each area comprises a tiny fraction of the population and the streets of Muncie: collectively, the population of these two neighborhoods totals approximately 53/10,000 of the population of Muncie.

The chief of police testified that the department will incur no additional costs by adding the annexed areas to its service area. Appellant's App. p. 221–22. The street supervisor testified that any burden on the Street Department would be minute, no equipment would need to be purchased, and no new employees would need to be hired. *Id.* at 163–65. The only additional costs are yearly fire hydrant and street light rentals for the areas, which will total $3,174 annually and were accounted for in the fiscal plans. Given this undisputed evidence, we can only conclude that the trial court erred by finding that Muncie failed to meet its statutory burden on this basis.

### C.  Fire Protection Services

█  Finally, the trial court found that Muncie failed to meet its statutory burden based on the lack of fire hydrants in the annexed areas. Muncie has a policy that a fire hydrant must be located within 1,000 feet of any structure where there is an adequate existing main. To fulfill this policy, two fire hydrants need to be installed in Brewington and one needs to be installed in Halteman. If a fire were to occur in these areas before the hydrants were installed, the fire department would use relay pumping, "where fire hose from two pumpers is laid with one pumper in between the hydrant and the pumper at the fire." Appellant's Br. p. 15.

The trial court found, among other things, that because the fire hydrants are installed by a public utility that cannot be controlled by Muncie,[5] Muncie "cannot guarantee that the fire hydrants will be installed within one year[.]" Appellant's App. p. 22–23; *see also* I.C. § 36–4–13(d)(4) (requiring that noncapital services must be provided to the annexed territory within one year after the effective date of annexation), –13(d)(5) (requiring that capital improvement services must be provided to the annexed territory within three years after the effective date of annexation).

Our Supreme Court has made it clear, however, that the fiscal plan itself is an "absolute promise[ ] that the annexed area will receive comparable capital and noncapital services, without regard to cost." *City of Fort Wayne*, 764 N.E.2d at 226 n. 5. Here, Muncie's fiscal plans state that it will provide the required fire hydrants within three years, as required by statute. Thus, Muncie has committed to provide that service and no further "guarantee" is required. And in any event, although the fiscal plans allow up to three years for hydrant installation, the uncontradicted evidence at trial established that, in fact, the three hydrants would be installed "within months" after the annexation. Appellant's App. p. 124, 142. Under these circum-

5.  As an aside, we note that, in fact, Muncie has specific statutory authority to require the public utility to install the hydrants. *See* Ind. Code § 8–1–2–101(a)(2) (providing that every municipality and county has the power to require of any public utility "such additions and extensions to its physical plant ... as shall be reasonable and necessary in the interest of the public, and to designate the location and nature of all such additions and extensions, the time within which they must be completed, and all conditions under which they must be constructed....").

stances, we can only conclude that the trial court erred by placing an added burden on Muncie that is not contained within subsection 13(d), and we find that Muncie did not fail to meet its statutory burden on this basis.

In sum, when affording substantial deference to Muncie's legislative judgment, as required by our standard of review, we find that Muncie's plan represents the City's credible commitment to provide these neighborhoods with equivalent capital and noncapital services in a timely fashion. Given that conclusion, the remonstrators must establish all of the grounds listed in subsection 13(e) to be entitled to relief.[6]

### III. Subsection 13(e)

Subsection 13(e)(2) provides that the trial court must order a proposed annexation not to take place if all of the conditions set forth in clauses (A) through (D) and, if applicable, clause (E) exist in the territory proposed to be annexed:

(A) The following services are adequately furnished by a provider other than the municipality seeking the annexation:

  (i) Police and fire protection.

  (ii) Street and road maintenance.

(B) The annexation will have a significant financial impact on the residents or owners of land.

(C) The annexation is not in the best interests of the owners of land in the territory proposed to be annexed as set forth in subsection (f).

(D) One (1) of the following opposes the annexation:

  (i) At least sixty-five percent (65%) of the owners of land in the territory proposed to be annexed.

  (ii) The owners of more than seventy-five percent (75%) in assessed valuation of the land in the territory proposed to be annexed.

Evidence of opposition may be expressed by any owner of land in the territory proposed to be annexed.

(E) This clause applies only to an annexation in which eighty percent (80%) of the boundary of the territory proposed to be annexed is contiguous to the municipality and the territory consists of not more than one hundred (100) parcels. At least seventy-five percent (75%) of the owners of land in the territory proposed to be annexed oppose the annexation as determined under section 11(b) of this chapter.

I.C. § 36–4–3–13(e)(2). At issue here are the elements requiring that the annexation have a significant financial impact on the Landowners and that at least 65% of the Landowners opposed the annexation.

In finding that the Landowners established that the annexation would have a significant financial impact on them, the trial court relied on a potential increase in property tax payments following annexation. There was no evidence of how much any given Landowner's taxes would increase, however, and none of the three Landowners who testified stated that the increase would have a significant financial impact. The trial court noted that some of the Landowners are on a fixed income. The Landowners did not testify, however, as to how low—or high—their income is fixed or whether a tax increase would cause a significant change in their lives.

**6.** Given that we have found that Muncie has established that fire hydrants will be installed within the relevant timeframe, we need not consider the trial court's conclusion that Muncie's alternate plan—the relay pumping system—is not equal in standard and scope to those normally provided to Muncie.

Furthermore, we note that all annexations add a municipal tax layer. Therefore, to find that any tax increase would cause a significant financial impact would essentially bring every annexation under the purview of this subsection, rendering this portion of the statute meaningless. As the amici observe, "[w]hen it drafted Section 13(e) the General Assembly understood and expected that all annexations would result in a new layer of municipal taxes, and therefore required the remonstrators to demonstrate that, given that inevitability, the particular annexation will impose something beyond the norm—something 'significant.'" Amici Br. p. 11. We simply cannot conclude that this record supports the trial court's conclusion that the Landowners met their burden with respect to this requirement.

Inasmuch as the Landowners must establish all elements contained within subsection 13(e)(2) and we have found that they failed to establish the significant financial impact element, we have necessarily concluded that they are not entitled to relief and need go no further. Briefly, however, we note that the trial court found that 65% of the Landowners opposed the annexation, fulfilling subsection 13(e)(2)(D). Our Supreme Court has explained that the mere fact that 65% opposed the annexation when they signed on for the initial remonstrance does not suffice to fulfill this subsection; instead,

> [t]he appropriate consideration should have been whether 65% of the landowners *continued to opposed the annexation.* Condition (D) contemplates the rest of the statutory arrangement only if understood as a testing of landowner sentiment after the rest of the process has run its course.

*City of Carmel,* 868 N.E.2d at 800 (emphasis added).

Here, the only evidence in the record on this issue is the testimony of two officials in the respective neighborhoods' associations, each of whom testified that no Landowners had indicated that they had changed their minds since signing the petition. Both witnesses also testified that they did not know how many people continued to oppose the annexation and could only venture a guess as to the number in opposition. We do not find that this evidence supports a conclusion that 65% of the Landowners *continued* to oppose the annexation; therefore, the trial court erred by reaching a contrary conclusion.

## CONCLUSION

In sum, we have found that Muncie met its statutory burden as set forth in Indiana Code section 36-4-3-13, meaning that the trial court must order the annexation to take place unless the Landowners prove that they are entitled to relief under subsection 13(e). We have also found that the Landowners failed to prove that the annexation would have a significant financial impact or that 65% of them continued to oppose the annexation; therefore, the trial court erred by granting the remonstrance petition and declaring the Ordinances to be invalid.

The judgment of the trial court is reversed.

FRIEDLANDER, J., and RILEY, J., concur.