FILED

Apr 28 2016, 9:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT
Alex C. Intermill
Curtis T. Jones
Bryan H. Babb
Jonathan W. Hughes
Bose McKinney & Evans LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEES
Stephen R. Buschmann
Thrasher Buschmann & Voelkel, P.C.
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 30S01-1510-MI-626

TOWN OF FORTVILLE,

*Appellant (Respondent below),*

v.

CERTAIN FORTVILLE ANNEXATION
TERRITORY LANDOWNERS,

*Appellees (Petitioners below).*

Appeal from the Hancock Circuit Court, No. 30C01-1310-MI-1832
The Honorable Richard D. Culver, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 30A01-1410-MI-442

**April 28, 2016**

**Rucker, Justice.**

In this involuntary annexation case the trial court determined, after a bench trial, that a statutory requirement for annexation had not been met. Because the trial court's judgment is not clearly erroneous, we affirm.

**Facts and Procedural History**

On March 28, 2013 the Town of Fortville ("Fortville") adopted Resolution 2013-3A proposing to annex 5,944 acres of land adjacent to the municipality. In July 2014, following notice and public hearings, Fortville adopted Ordinance 2013-3A and Resolution 2013-7A annexing a reduced area of 644 acres (the "Annexation Territory"). In the meantime a number of landowners ("Remonstrators") comprising ninety-three (93) percent of the owners of parcels within the affected area filed a petition challenging the proposed annexation. Prior to a hearing on the petition, the parties entered various stipulations which had the effect of narrowing the issues for trial to a single determination, namely: whether the Annexation Territory is needed and can be used by the municipality for its development in the reasonably near future. After a hearing the trial court entered judgment in favor of the Remonstrators ordering that Fortville's annexation shall not take place. In essence the trial court concluded the evidence did not support Fortville's contention that it needed the Annexation Territory for its development in the reasonably near future. In support of its judgment the trial court issued detailed findings of fact and conclusions of law.

Fortville appealed contending: (1) the trial court erred as a matter of law by not giving substantial deference to the municipality's decision to proceed with annexation, and (2) there was sufficient evidence to demonstrate the Annexation Territory was needed and can be used for Fortville's development in the reasonably near future. Focusing primarily on this latter claim, the Court of Appeals reversed the trial court's judgment concluding the trial court failed to apply the proper legal standard in assessing whether Fortville needed and could use the Annexation Territory in the reasonably near future. See Town of Fortville v. Certain Fortville Annexation Territory Landowners, 36 N.E.3d 1176, 1179 (Ind. Ct. App. 2015), vacated. Having previously granted transfer we now affirm the judgment of the trial court. Additional facts are set forth below.

2

**Annexation Procedure and the Standard of Review**

"The framework of Indiana's annexation laws has long featured three basic stages: (1) legislative adoption of an ordinance annexing certain territory and pledging to deliver certain services within a fixed period of time; (2) an opportunity for remonstrance by affected landowners; and (3) judicial review." City of Carmel v. Steele, 865 N.E.2d 612, 615 (Ind. 2007) (citation omitted). Although the applicable statutes have undergone several revisions over the years,[1] certain general propositions of law have long applied. Id. at 615-16. For instance, annexation statutes invest in the governing body of a municipality the exclusive authority to annex territory. Id. at 616. And as a legislative function annexation becomes a question subject to judicial intervention only upon review as provided by statute. Id.

Because a municipality's authority to annex territory is defined by statute, the court's role is to determine whether the municipality has exceeded its statutory authority, and whether it has met the conditions imposed by the statute. Rogers v. Mun. City of Elkhart, 688 N.E.2d 1238, 1239-40 (Ind. 1997). Although the burden of pleading is on the landowner, "the burden of proof is on the municipality to demonstrate compliance with the statute." Id. The court sits without a jury and enters judgment on the question of annexation after receiving evidence and hearing argument from both sides. Ind. Code § 36-4-3-12.

Once the trial court has decided whether to approve an annexation ordinance, either the municipality or the landowner may seek appellate review. Where, as here, the trial court upon its own motion enters special findings of fact and conclusions of law, we apply the standard of review set forth in Indiana Trial Rule 52. Chidester v. City of Hobart, 631 N.E.2d 908, 909 (Ind. 1994). We review issues of fact for sufficiency of the evidence and look to the record only for inferences favorable to the judgment. Id. at 910. We will not set aside findings or judgments unless clearly erroneous. "Findings are clearly erroneous only when the record contains no facts

---

[1] See Id. at 615-16 n.1 (observing "Indiana's statutory annexation scheme dates to 1824, and for much of the State's history aggrieved property owners had virtually no recourse to contest annexation. In 1991 and 2001, the Legislature extensively revised the annexation statutes" (internal citations omitted)). Indeed recent legislative enactments further limit a municipality's ability to involuntarily annex certain agricultural lands. See generally Ind. Code ch. 36-7-4.

to support them either directly or by inference." Yanoff v. Muncy, 688 N.E.2d 1259, 1262 (Ind. 1997) (quotation and citation omitted). And a "judgment is clearly erroneous if it applies the wrong legal standard to properly found facts." Id. (citation omitted). In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made. Id. (citation omitted). This case does not meet that standard.

## Discussion
### I.

Fortville first contends the trial court erred as a matter of law because it failed to give substantial deference to Fortville's decision to annex. We of course recognize that "annexation 'is essentially a legislative function'" and that "courts play only a limited role in annexations and must afford the municipality's legislative judgment substantial deference." In re Annexation of Certain Territory to City of Muncie, 914 N.E.2d 796, 801 (Ind. Ct. App. 2009) (citing City of Fort Wayne v. Certain Southwest Annexation Area Landowners, 764 N.E.2d 221, 224 (Ind. 2002)). But that does not mean a trial court's role is to sustain blindly an annexation decision simply because it is the product of legislative decision-making. Rather, the court is obligated to ensure the annexing municipality has "not exceeded its authority and that the statutory conditions for annexation have been satisfied." Chidester, 631 N.E.2d at 910; accord Bradley v. City of New Castle, 764 N.E.2d 212, 216 (Ind. 2002) ("The trial court's role is to decide whether the municipality has operated within its authority and satisfied the statutory conditions for annexation."); City of Aurora, 165 N.E.2d at 145 ("The court is . . . simply given the power to determine, in the event there is a remonstrance filed, whether certain conditions imposed by the statute are met."). The judgment of the court simply establishes the fact that the conditions of the statute necessary to overcome a remonstrance have or have not been met; and if they have met the statutory requirements then the trial court is bound to approve annexation of the affected territory. Chidester, 631 N.E.2d at 910.

4

Based on our review of the record, we are satisfied the trial court fulfilled its obligation to consider only whether the statutory conditions for annexation have been satisfied. We thus turn to Fortville's second contention.

**II.**

Indiana Code section 36-4-3-13 outlines in detail the various requirements that must be satisfied before a proposed annexation may take place. As indicated earlier, prior to trial the parties entered into various stipulations concerning the statutory requirements leaving but one for the trial court's determination: "[t]hat the territory sought to be annexed is . . . needed and can be used by the municipality for its development in the reasonably near future." I.C. § 36-4-3-13(c)(2) (2013).

The trial court determined Fortville's "evidence does not support a conclusion for the need for annexation in the near future." Order at 7, ¶ R. Disagreeing with the trial court, the Court of Appeals was of the view that in reaching its determination "the trial court was looking for evidence of *physical construction* in the area in the near future to fulfill Fortville's burden of showing that the Annexation was needed and could be used by Fortville for its development in the reasonably near future." Town of Fortville, 36 N.E.3d at 1179 (emphasis added). In reversing the trial court's judgment, the Court of Appeals relied on a footnote from this Court's opinion in Chidester, 631 N.E.2d at 913 n.6, to conclude:

> our Supreme Court—in upholding the trial court's finding that the City of Hobart needed and could use the land to be annexed— noted that the trial court found that the City needed and could use the land for "transportation linkages with other developing areas, to control adjacent development on its borders, and to prevent conflicting land uses." Therefore, it seems that a municipality need not demonstrate immediate plans to build on the annexed land in order to show that it needs and can use the land for its development in the reasonably near future.

Town of Fortville, 36 N.E.3d at 1180.

Our colleagues read the Chidester footnote too broadly. At stake in that case was a portion of the statute that required "a city's annexation plan show that the city will promptly provide the annexed territory with municipal services equivalent to those it already provides in similar areas of the existing city." 631 N.E.2d at 910. After examining the evidence we noted the trial court "concluded that the fiscal plan and the evidence established that Hobart will provide equivalent capital and non-capital services to like areas of the annexed territory." Id. at 911. In a footnote in a section addressing the challengers' waived constitutional claims—one being that the annexation constituted a taking without just compensation under the Fifth and Fourteenth Amendments because Hobart merely wanted to increase its tax revenues—we said:

> the current statute's demand that the city need and can use the territory carries with it the requirement that cities demonstrate more than an interest in increased tax revenues. . . . In this case, the record amply supports Judge Richards' earlier findings and conclusion . . . that Hobart needed and could use the annexed territory for transportation linkages with other developing areas, to control adjacent development on its borders, and to prevent conflicting land uses.

Id. at 913. Although we affirmed the trial court's judgment based on the facts presented, we do not read the Chidester footnote as standing for the broader proposition that physical construction is an inappropriate consideration in determining whether the territory sought to be annexed is needed and can be used by the municipality for its development in the reasonably near future.

In any event, assuming for the sake of argument the trial court improperly relied on the absence of any proposed "bricks and mortar" development, the trial court's findings demonstrate the trial court did consider non-brick and mortar evidence as well. For example, the trial court's judgment contained the following findings and conclusions:

> 8. The proposed Annexation Territory squares the western boundary of the town and connects the northern and southern sections of the town.
>
> 9. Over fifty percent (50%) of the Remonstrators live in houses that connect with a road that is within the town's current boundaries.

6

10. Territory just north and west of the Annexation Territory has seen growth and development.

\*\*\*

12. Fortville operates its own municipal water and sewer utilities and has invested significant amounts of money in both utilities over the last several years. The annexation area is included within the town[']s agreed upon service area.

13. The Annexation Territory currently receives various town services . . . [but] Fortville does not receive a portion of the taxes paid by land owners in the Annexation Territory . . . .

\*\*\*

32. Fortville presented a number of reasons that it desired to annex the Annexation Territory, including:

A. The annexation will produce additional tax revenues for [Fortville] (Ex 2, pg 5)[;]

B. Residents of the Annexation Territory use roads that Fortville is required to maintain due to prior annexations, creating an unfair tax situation[;]

C. The need to control zoning in the Annexation Territory;

D. The desire to control sewer service outside the town limits although Fortville currently has the exclusive right to place sewers in the Annexation Territory and beyond. . . .[;]

E. The desire to protect nearby areas from competition for the provision of water service, although:

(1) The control of water service in an area is on a "first come" basis;

(2) There was no evidence that Citizens Utilities has any intent to attempt to provide water service to the [A]nnexation [T]erritory;

(3) Fortville has the authority to extend water service outside its corporate boundaries and into the Annexation Territory anytime it wishes, thus establishing water service control in the area;

7

(4) Fortville has agreed to extend its water service into Hamilton County into a proposed development called Vermillion (Ex 15), citing the fact that the extension of such service is reasonable since the development is fairly assured to take place[;]

(5) Fortville does not wish to extend its water service into the Annexation Territory at the present time, because unlike Vermillion, Fortville has no expectation that the Annexation Territory will be developed in the reasonably near future, thus lacking a sufficient number of water customers to justify the cost of installation of water mains[;]

F. The desire to protect its Wellhead Protection Area (Ex 22), a small part of the Southern tip of which extends into the Annexation Territory[;]

G. The desire to round out its boundaries[;]

H. That it responds to dispatched police runs in the Annexation Territory.

Order at 2, 4-5. The court concluded that "Fortville's anticipation that residential growth will occur in Fortville based on the growth in Fishers and McCordsville is reasonable. Although the evidence suggests a long-term inevitability to annexation, the evidence does not support a conclusion for the need for annexation in the near future." Id. at 7, ¶ R. In sum the trial court considered physical as well as non-physical development in reaching its conclusion.

Unrebutted evidence shows that Fortville has no plans to build roads through the territory such as the transportation linkages as in Chidester, Fortville's Ex. 2 at 11-12 (no additional street lights are currently proposed, no current cost estimate of capital improvements to support road and street improvements because no proposed projects existed); or provide sanitary sewer service until unspecified development moves into the Annexation Territory, Id. at 6; or provide parks and recreation services to the Annexation Territory, Id. at 14 (hypothetical developers will be required to provide green space for future parks and recreation demands, but no current plans).

8

The evidence also shows that none of the Remonstrators have been approached by developers interested in their land. Tr. at 160 (testimony of Remonstrator Reichenbach); Tr. at 168 (testimony of Remonstrator Kingen); Tr. at 174 (testimony of Remonstrator Garst); Tr. at 184 (testimony of Remonstrator Hulburt). Further, Fortville has presented no evidence it plans to encourage or entice Remonstrators to sell their land in order to aid the town's development. See Tr. at 50 (testimony of Town Council President William Hiday: "[N]obody's putting that proverbial gun to their head" to push Remonstrators to sell their farmland). It is not necessary that *these specific* 644 acres must be developed with brick and mortar projects in order to further the town's development. But the evidence does not show how with the addition of this land to Fortville the town will develop in any other way or in any other direction in the reasonably near future, aside from the Annexation Territory providing an increased tax base from which to recoup police protection fees, road maintenance fees, and fire hydrant protection fees. See Br. of Appellant at 5-8 ("Remonstrators receive these services without contributing toward that cost"; "none of the tax dollars paid by the Remonstrators go towards paying for maintenance of that road [that borders Fortville and the Annexation Territory]"; "none of their tax dollars go to [Fortville] to offset the associate costs [of police protection]"; "Remonstrators . . . pay none of the hydrant rentals but receive the same benefit of having reliable and ample water supply for fire suppression as [Fortville] citizens, but only [Fortville] citizens pay for that benefit"). But we note an increased tax base cannot be the only reason to support the "needed and can be used for its development in the reasonably near future" requirement of an annexation. See City of Aurora, 165 N.E.2d at 148; accord Chidester, 631 N.E.2d at 913 n.6.

Fortville also argues it is concerned about preserving its water utility and the Annexation Territory can be used to prevent other providers from establishing a presence in the area. But even without the annexation, Fortville is able to establish its water presence in the Annexation Territory because it is "first come, first served." Tr. at 56. It simply does not wish to do so at this time because there is no pending development in need of water services. Tr. at 112 (Fortville's witness Daniel Cutshaw explaining it is a risk for a water provider to expand water lines "unless somebody is wanting them or paying for them"). In fact, the Fortville water utility has expanded its service to a subdivision near Fishers because there was demand for the water—but no demand for water in the Annexation Territory. Tr. at 110.

The trial court's findings also reflect Fortville annexed 775 acres in 2007 which included 500 acres of farm land that had yet to be developed, and "Fortville presented no evidence of impending development on any of that annexed land." Order at 3, ¶ 23. Further, no residential building permits have been issued in the Annexation Territory since 2007, and only seventeen building permits have been issued in all of Fortville since 2009. Id. at ¶ 25, 27. The evidence supports these findings. For these reasons, the trial court's decision upholding the remonstrance and denying annexation because Fortville has failed to meet its burden in showing the Annexation Territory is needed and can be used for Fortville's development in the reasonably near future is not clearly erroneous.

## Conclusion

We affirm the judgment of the trial court.

Rush, C.J., and Dickson, David and Massa, JJ., concur.