# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 31 2018, 8:01 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Darlene R. Seymour
Ciyou & Dixon, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Steven E. Ripstra
Ripstra Law Office
Jasper, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| J.W.,<br>*Appellant-Respondent,*<br><br>v.<br><br>D.W.,<br>*Appellee-Petitioner.* | August 31, 2018<br><br>Court of Appeals Case No.<br>18A-DR-245<br><br>Appeal from the Martin Circuit Court<br><br>The Honorable William E. Weikert, Senior Judge<br><br>Trial Court Cause No.<br>51C01-1603-DR-44 |

**Bailey, Judge.**

# Case Summary

J.W. ("Mother") and D.W. ("Father") have one child together ("Child"), who was born during their marriage. Following proceedings to dissolve the marriage, the trial court entered an order addressing physical custody, legal custody, and parenting time. Mother now appeals. We affirm.

# Issues

Mother presents the following issues:

I. Whether the trial court clearly erred by granting Father primary physical custody; and

III. Whether the trial court clearly erred by granting Father sole legal custody.

# Facts and Procedural History

Mother and Father began dating in 2015 and married in October 2015. When they married, Mother was pregnant with Child, who was born in January 2016. During the marriage, there was violence between Mother and Father that led to their separation on March 9, 2016. On that day, both Mother and Father had consumed alcohol and they became violent with one another at their residence. Law enforcement arrived, and Mother and Father were arrested and charged with battery. Later that month, Father petitioned to dissolve the marriage. Meanwhile, the Indiana Department of Child Services filed a petition alleging that Child was a Child in Need of Services ("CHINS"), and Child was placed

with his paternal grandmother. Around this time—while Mother was out on bond for the battery incident—Mother became intoxicated at a friend's house, fell down the stairs, and was transported to the hospital.

[4] In April, in connection with the CHINS matter, Child was placed in Mother's primary physical custody with Father having supervised parenting time. The CHINS matter was later dismissed. Thereafter, the trial court issued a provisional custody order upon Father's emergency motion in September 2016. Prior to the filing of the emergency motion, Mother and Father had met to exchange Child, with Father to give Child to Mother. Mother had been drinking. An officer arrived, by which time Mother had Child in a car seat in her vehicle. Mother tried to persuade the officer to let her leave with Child. Mother was arrested, charged with Operating While Intoxicated, and she pleaded guilty to a felony-level offense. The court held a telephonic conference on Father's motion, and later entered a provisional order whereby Father became Child's primary physical custodian. Pursuant to the order, Mother was to have supervised parenting time on Saturdays and Sundays. The court later modified the provisional arrangement in November 2016, giving Mother unsupervised parenting time from Saturday evenings to Monday evenings.

[5] A final hearing was held on March 20, April 12, and September 11, 2017. Meanwhile, Mother faced an additional charge of Operating While Intoxicated related to events that occurred in May 2017.

[6]     After bifurcating issues and first entering an order dissolving the marriage, the trial court later entered a final custody order in January 2018. The trial court entered special findings, including a determination that both parents "ha[d] abused alcohol in the past," and "ha[d] participated in various treatment programs and services." App. Vol. II at 24. With respect to Father, the court found that he had "acknowledge[d] he was consuming alcohol to excess during the marriage," and had maintained his sobriety since March 9, 2016, the date of the incident that precipitated the separation. *Id.* at 22. As to Mother, the court found that she had maintained her sobriety since May 2017.

[7]     The court found that both parents had criminal histories, but Mother's criminal history was "worse." *Id.* at 23. The court further found that Father's "behavior ha[d] been better than [Mother's] during the pendency of this cause," with Father having "not had any arrests since both parents were arrested on March 9, 2016," and Mother having "had many contacts with the criminal justice system." *Id.* The trial court also found that Child "ha[d] thrived in [Father's] primary care and custody," and that Father's flexible work-from-home schedule allowed Father to care for Child without needing a babysitter. *Id.* at 24.

[8]     The trial court stated that, after considering its custody-related findings, including "the criminal histories, mental health issues, and the fact that [Mother] failed when she had custody" of Child from April to September 2016, it was "convinced that Father should have primary physical custody." *Id.* at 26. The court granted Mother parenting time, and elected to deviate—in Mother's favor—from the Indiana Parenting Time Guidelines pertaining to children less

than thirty-six months old. The order specified that Mother would have parenting time "every other weekend from 6 p.m. on Friday to 6 p.m. on Sunday," and on "all scheduled holidays for 10 hours." *Id.* The order further provided that, effective July 1, 2018, Mother would have additional holiday time with Child. As to legal custody, the trial court granted Father sole legal custody because "the parents have trouble communicating." *Id*.

[9] Mother now appeals.

# Discussion and Decision

[10] In matters involving child custody, the trial court "shall determine questions of law and fact." Ind. Code § 31-17-2-7. Moreover, upon a party's timely written request—as there was here—the trial court "shall find the facts specially and state its conclusions thereon." Trial Rule 52(A). When the trial court has done so, we apply a "two-tiered review" whereby we will "affirm when the evidence supports the findings, and when the findings support the judgment." *Wysocki v. Johnson*, 18 N.E.3d 600, 603 (Ind. 2014). In conducting our review, we "cannot weigh the evidence but must consider it in a light most favorable to the judgment," *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011), giving "due regard . . . to the opportunity of the trial court to judge the credibility of the witnesses," T.R. 52(A). Moreover, we are especially deferential to trial courts in matters of family law. *See Best*, 941 N.E.2d at 502. With that deference in view, we "shall not set aside the findings or judgment unless clearly erroneous." T.R. 52(A). Findings are clearly erroneous when the record contains no facts to

support them either directly or by inference; a judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Town of Fortville v. Certain Fortville Annexation Territory Landowners*, 51 N.E.3d 1195, 1198 (Ind. 2016). We will reverse only upon a showing of clear error: "that which leaves us with a definite and firm conviction that a mistake has been made." *Egly v. Blackford Cty. Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1235 (Ind. 1992).

[11] During the pendency of dissolution proceedings, the trial court may issue provisional custody orders "to the extent the court considers proper." I.C. § 31-15-4-8. However, in entering a final custody order, the trial court must comply with Indiana Code Section 31-17-2-8, which provides, in pertinent part:

> The court shall determine custody and enter a custody order in accordance with the best interests of the child. In determining the best interests of the child, there is no presumption favoring either parent. The court shall consider all relevant factors, including the following:
>
> (1) The age and sex of the child.
>
> (2) The wishes of the child's parent or parents.
>
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
>
> (4) The interaction and interrelationship of the child with:
>
> (A) the child's parent or parents;

(B) the child's sibling; and

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

(A) home;

(B) school; and

(C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

## Physical Custody

[12]    In challenging the court's decision to grant Father primary physical custody, Mother focuses on her progress toward recovery.[1]  Mother largely portrays

---

[1] In directing argument toward physical custody, Mother interweaves argument concerning the amount of parenting time she received under the order.  We review parenting-time decisions for an abuse of discretion, which occurs when the court's decision is clearly against the logic and effect of the facts and circumstances before it or where the trial court errs as a matter of law. *See Perkinson v. Perkinson*, 989 N.E.2d 758, 761 (Ind. 2013).  Pursuant to Indiana Code Section 31-17-4-1, a noncustodial parent "is entitled to reasonable parenting time rights" unless the court makes certain findings.  Mother has not directly argued that the order failed to afford her "reasonable" parenting time.  Nonetheless, Mother's argument largely focuses on comparing the provisional order with the final order.  Mother argues that the order "upend[ed]" Child's routine, Appellant's Br. at 13, and resulted in an "extreme reduction" in her parenting time "tantamount to denial of parenting time," *id.* at 15.  To the extent Mother is arguing that her parenting time should not fall

herself in a positive light while directing our attention to evidence less favorable to Father, including evidence that she claims "appears to have been written off despite its serious nature." Appellant's Br. at 18. Mother characterizes the order as "hail[ing] [Father] as the better parent, one who is deserving of primary physical and sole legal custody." *Id.* at 19. Mother also focuses on the care she gave to Child "for the first nine (9) months of his life," before she was arrested when exchanging Child. *Id.* at 18. Mother asserts that her "argument is categorically supported by the evidence," and the "findings are incomplete and fail to include significant facts relevant to the best interest analysis." *Id.* at 17.

[13] Yet, the trial court—not this Court—is the fact-finder, and we may not reweigh the evidence. Under our deferential standard of review, "it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by [the] appellant before there is a basis for reversal." *Steele-Giri v. Steele*, 51 N.E.3d 119, 124 (Ind. 2016) (quotation marks omitted). Here, contrary to Mother's assertion that the court improperly failed to "consider all evidence from the time of the child's birth," Appellant's Br. at 18, the order contains thorough factual findings concerning the trajectory

---

on a Saturday because she was working those days, Mother testified that she could adjust her work schedule to accommodate her parenting time. Next, although Mother asserts that the court should not have "limited" her to guideline time under the Indiana Parenting Time Guidelines, *id.* at 18, Mother declines to mention that, in part of the order, the court deviated from those guidelines in Mother's favor. Moreover, the cases to which Mother directs us are not on all fours, as they involve either the complete deprivation of parenting time, *see Perkinson*, 989 N.E.2d at 766, or the limitation of time in light of a determination that the parent posed a danger to the child, *see In re Paternity of B.J.N.*, 19 N.E.3d 765, 770 (Ind. Ct. App. 2014). We are ultimately not persuaded that the order failed to afford Mother reasonable parenting time. *See* Ind. Parenting Time Guidelines pmbl. (providing that, in general, the guidelines "are applicable to all child custody situations"). We therefore identify no abuse of discretion, and decline to disturb the parenting-time order.

of events and the matters of significance to its custody determination. Moreover, the trial court was free to give more weight to the period of time immediately preceding its decision—during which Father was Child's primary custodian and Child thrived in Father's care. Indeed, the evidence indicates that Father provided stability amid Mother's struggles with alcohol, interactions with law enforcement, and efforts toward sustained sobriety.

[14] The trial court found that Mother had a good relationship with Child, a finding that the evidence amply supports. However, the evidence also supports the trial court's determination that it would be in Child's best interests to remain in the primary physical custody of Father—who Child had been accustomed to living with on a primary basis. Moreover, although Mother made laudable steps in her recovery, we are not persuaded that the order amounted to improperly "penaliz[ing] Mother" for struggling with alcohol abuse. *Id.* at 16. Nor are we persuaded that the court erred, as Mother suggests, by improperly considering those struggles during the pendency of the matter. Nonetheless, to the extent that Mother challenges the court's observation that Mother had "failed" when she relapsed while having primary custody of Child from April to September 2016, it was not entirely artful for the court to invoke the language of failure. Yet, from the evidence, the court could reasonably determine that the period of custody was not completely successful when, near its end, Mother tried to persuade an officer to let her drive with Child after she consumed alcohol.

[15] Pursuant to our standard of review, we conclude that the evidence supports the findings, and the findings support the trial court's decision that it was in Child's best interests for Father to be the primary physical custodian.

## Legal Custody

[16] When determining legal custody, as in matters of physical custody, the trial court must evaluate the child's best interests. *See* I.C. § 31-17-2-8. In evaluating "whether an award of joint legal custody . . . would be in the best interest of the child," the court must consider, *inter alia*, "whether the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare." I.C. § 31-17-2-15. Furthermore, "the court shall consider it a matter of primary, but not determinative, importance that the persons awarded joint custody have agreed to an award of joint legal custody." *Id.*

[17] Here, Mother and Father did not agree to joint legal custody, and there was testimony that Mother and Father were "not so good" at communicating about most issues, Tr. Vol. III at 192, that their communication had not improved, and that issues arose when sending text messages to one another. Mother argues that the trial court should have ordered joint legal custody. She now directs us to evidence indicating that she was the better communicator and that Father made unilateral decisions concerning Child during the course of the dissolution proceedings. Mother characterizes the court's decision as creating a "perverse incentive," asserting that "[i]t is contrary to our custody laws for a parent who sows the seeds of discord to reap the benefits of their misconduct."

Appellant's Br. at 24. Yet, as Mother acknowledges elsewhere in her brief, "[n]either Mother nor Father were blameless in this case," *id.* at 16, and the evidence indicates that communication had broken down before these proceedings commenced. Ultimately, we must decline Mother's request to reweigh the evidence, which indicates that Mother and Father had a relatively brief relationship fraught with arguments and eventually violence that led to their separation. Despite the passage of time, Mother and Father had not been able to effectively communicate about parenting issues. The trial court could reasonably determine that Mother and Father lacked the kind of cooperative relationship that would warrant an order of joint legal custody. We accordingly conclude that the decision concerning legal custody was not clearly erroneous.

# Conclusion

[18] The trial court did not clearly err by granting Father primary physical custody and sole legal custody of Child.

[19] Affirmed.

Mathias, J., and Bradford, J., concur.