## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 27 2020, 9:37 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Libby Yin Goodknight
Krieg DeVault LLP
Indianapolis, Indiana

Nancy J. Townsend
Krieg DeVault LLP
Merrillville, Indiana

ATTORNEY FOR APPELLEE

Carri N. Crider
Law Offices of Carri N. Crider
Crown Point, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| County Seat Bakery, LLC, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> Sakura KJ Japanese Restaurant, LLC <br> *Appellee-Defendant.* | May 27, 2020 <br><br> Court of Appeals Case No. 19A-CT-2806 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Stephen E. Scheele, Judge <br><br> Trial Court Cause No. 45D05-1909-CT-918 |

**Bailey, Judge.**

# Case Summary

County Seat Bakery, LLC ("County Seat") appeals the declaratory judgment that its unrecorded written lease is void against Sakura KJ Japanese Restaurant, LLC ("Sakura"), which purchased the leased property (the "Premises"). The trial court determined that the lease was void against Sakura because it acquired the Premises in good faith—lacking actual and constructive knowledge of the lease. County Seat now appeals, alleging that the trial court clearly erred in finding good faith because Sakura had constructive knowledge of the lease.[1]

We affirm.

# Facts and Procedural History

In 2014, Chris Lozanovski ("Lozanovski") leased the Premises to County Seat.[2] The written lease was not recorded. The lease had an initial term of five years, expiring on April 30, 2019, and gave County Seat options to renew for additional five-year terms. County Seat operated a bakery on the Premises.

In December 2018, Lozanovski and Sakura negotiated a sale of the Premises. Lozanovski represented that the lease would expire on April 30, 2019—a representation which, at that point, was true. Sakura toured the Premises with

---

[1] Our disposition of this issue renders moot County Seat's contention that Sakura breached the lease.

[2] There is no dispute that Lozanovski had an ownership interest—at times, through an entity. We use the term Lozanovski to refer to his personal actions as well as his actions on behalf of any entity or co-owner.

Lozanovski while County Seat operated its bakery. Sakura did not ask Lozanovski for a copy of the lease, and it did not contact County Seat to inquire about the lease. Lozanovski and Sakura entered a purchase agreement in December 2018, with a closing scheduled on May 31, 2019. After the execution of the purchase agreement—and prior to the closing—County Seat notified Lozanovski that it was exercising its option to renew. The renewal was not recorded, and there is no indication that Sakura was aware of the renewal.

[5] Sakura pursued a title search, which did not reveal the unrecorded lease rights. At the closing of the transaction on May 31, 2019, Lozanovski executed an affidavit that contained the following representation: "That the Affiant is in sole possession of the [Premises] and that no other party has possession, or has right of possession under any tenancy, lease or other agreement, written or oral." Ex. at 33. At that time, County Seat continued to openly operate a bakery on the Premises. The transaction closed, leading to a dispute between County Seat and Sakura. County Seat wanted to remain on the Premises under the terms of the renewed lease whereas Sakura wanted County Seat to vacate the Premises.

[6] County Seat initiated the instant action, seeking—in pertinent part—a declaratory judgment that the renewed lease was enforceable against Sakura. The litigation focused on provisions of the Indiana Code specifying that a lease for a period in excess of three years, if unrecorded, is void against a good-faith purchaser for value. *See* Ind. Code § 32-31-2-2. County Seat argued that Sakura did not acquire the Premises in good faith because—even if Sakura did

not have actual knowledge of the lease—Sakura failed to conduct due diligence, unreasonably relying on Lozanovski's representations regarding the lease.

[7] The matter progressed to a fact-finding hearing, after which the trial court entered a written order accompanied by findings and conclusions. The court found that "Sakura acquired the Premises from Lozanovski in good faith." Appellant App. Vol. II at 9. As to good faith, the trial court found that "Sakura purchased the Premises without notice of any extended leasehold rights that County Seat . . . may have had in the Premises, and such notice cannot be inferred or otherwise imputed to Sakura." *Id.* The court determined that, "[a]t the time of closing on May 31, 2019, Sakura had no reason to believe that a leasehold interest in the Premises existed that could or would extend beyond the May 31, 2019 closing/purchase/conveyance of the Premises." *Id.* at 8. It also determined that Sakura "had no reason to disbelieve the title search undertaken on the Premises"—which did not reveal a tenancy interest—or "to disbelieve . . . the representations" made by Lozanovski. *Id.* Ultimately, the trial court concluded that County Seat's renewed lease was void against Sakura.

[8] County Seat now appeals.

# Discussion and Decision

[9] Here, the trial court entered *sua sponte* findings and conclusions. Those findings and conclusions control the issues they cover, with a general-judgment standard controlling "other issues . . . not covered by such findings." Ind. Trial Rule

52(D).  On appeal, we look to whether the evidence supports the findings and the findings support the judgment.  *Masters v. Masters*, 43 N.E.3d 570, 575 (Ind. 2015).  In accordance with Trial Rule 52(A), we "shall not set aside the findings or judgment unless clearly erroneous" and shall give "due regard . . . to the opportunity of the trial court to judge the credibility of the witnesses."  Clear error is "that which leaves us with a definite and firm conviction that a mistake has been made."  *Masters*, 43 N.E.3d at 575 (quoting *Egly v. Blackford Cty. Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1235 (Ind. 1992)).  Findings are clearly erroneous if "the record contains no facts supporting them either directly or inferentially."  *Town of Brownsburg v. Fight Against Brownsburg Annexation*, 124 N.E.3d 597, 601 (Ind. 2019).  Moreover, the judgment "must follow from the conclusions of law and is clearly erroneous if the court applied the 'wrong legal standard to properly found facts.'"  *Id.* (quoting *Town of Fortville v. Certain Fortville Annexation Territory Landowners*, 51 N.E.3d 1195, 1198 (Ind. 2016)).

[10]  In its written order, the trial court looked to our recording statutes.  Indiana Code Section 32-31-2-1 provides as follows: "Not more than forty-five (45) days after its execution, a lease of real estate for a period longer than three (3) years shall be recorded . . . in the recorder's office of the county in which the real estate is located."  Moreover, Indiana Code Section 32-31-2-2 specifies that "[i]f a lease for a period longer than three (3) years is not recorded within forty-five (45) days after its execution, the lease is void against any subsequent purchaser, lessee, or mortgagee who acquires the real estate in good faith and for valuable consideration."  These recording statutes reflect the legislature's decision to

"provide protection to subsequent purchasers, lessees, and mortgagees." *Crown Coin Meter Co. v. Park P, LLC*, 934 N.E.2d 142, 147 (Ind. Ct. App. 2010).

[11] As an initial matter, County Seat argues that even if the foregoing statutes render the lease void against Sakura, the provisions of the lease are enforceable as covenants that run with the land. We disagree. This case involves a lease— and the plain recording statutes supersede any such common-law analysis. *See S. Ry. Co. v. Howerton*, 105 N.E. 1025, 1029 (Ind. 1914) ("[T]he common law is not continued in force where the same subject is covered by a statute.").

[12] As to the recording statutes, County Seat does not dispute that Sakura paid valuable consideration in an arm's-length transaction. Instead, County Seat challenges the finding that Sakura acquired the Premises in good faith. There is no statutory definition for good faith in this context. Looking to the common law, a good-faith purchaser—also known as a "bona fide" purchaser—is one who lacks notice of the outstanding rights of others. *Crown*, 934 N.E.2d at 147 n.3. A purchaser has notice if it knew or should have known of the rights. *See id.* at 147. Put differently, a good-faith purchaser lacks actual and constructive knowledge of the outstanding rights of a third party. *See id.* The knowledge of a purchaser in a given case is a question of fact reserved for the fact-finder. *Id.*[3]

---

[3] Cases involving recording statutes often use terminology drawn from English courts of equity, including the somewhat confusing phrase "implied actual notice." *See Mishawaka-St. Joseph Loan & Tr. Co. v. Neu*, 196 N.E. 85, 89-90 (Ind. 1935). Synthesizing the concepts pertinent to this case, we refer to types of knowledge instead of types of notice. *See generally* Joseph R. Long, *Notice in Equity*, 34 Harv. L. Rev. 137, 140 (1920) ("Except

[13]     There is no dispute that Sakura—having been told that the lease expired on April 30, 2019, and that there was no tenancy as of May 31, 2019—lacked actual knowledge that there was a lease when it acquired the Premises. Thus, this case turns on whether Sakura had constructive knowledge of the lease. A purchaser has constructive knowledge of all information that a reasonably prudent purchaser would have discovered when conducting due diligence. *See id.* at 148. No knowledge will be imputed to the purchaser if it conducted an objectively reasonable inquiry under the totality of the circumstances. *See id.*

[14]     County Seat briefly argues that the trial court applied the wrong legal standard for constructive knowledge, looking to "Sakura's subjective beliefs and subjective reliance on the representations" instead of objective reasonableness. Br. of Appellant at 24. Having reviewed the findings and conclusions—wherein the court properly considers what Sakura "knew or should have known" and whether it had reason to disbelieve information before it—we are not persuaded that the trial court applied the wrong standard. Appellant's App. Vol. II at 8.

[15]     Turning to the findings and conclusions, the trial court determined that Sakura purchased the Premises in good faith—without notice of ongoing lease rights. In considering the matter of due diligence, the trial court found that Sakura had (1) toured the Premises; (2) obtained a representation that the lease with County Seat would expire on April 30, 2019; (3) pursued a title search; and (4) obtained

for a few cases of so-called constructive notice, the term 'knowledge' might be substituted for 'notice' as being precisely synonymous therewith, and judges in fact frequently use the two terms interchangeably.").

a representation that there was no possessory interest or tenancy interest as of the closing of the transaction.[4] The trial court determined that Sakura had no reason to disbelieve Lozanovski's representations regarding the Premises.

[16] County Seat asserts that "[a]ll Sakura had to do" was request a copy of the lease, which would have alerted Sakura to the possibility that County Seat had an option to renew. Br. of Appellant at 13. According to County Seat, failing to obtain the lease was objectively unreasonable. However, it is not as though Sakura wholly failed to inquire about lease rights. Rather, as the court found, "Sakura inquired . . . and was told by . . . Lozanovski that [the] commercial lease of the Premises would expire on April 30, 2019." Appellant's App. Vol. II at 7. Moreover, we disagree with any suggestion that reasonableness strictly turns on how easily a purchaser could have obtained information. *See* Reply Br. at 11. The question is whether, under the totality of the circumstances, a reasonably prudent purchaser would have undertaken the inquiry. Here, the court found that Sakura conducted due diligence without obtaining the lease.

[17] County Seat mainly focuses on evidence that it possessed the Premises at the time of closing. Directing our attention to caselaw, County Seats asserts that—as a matter of law—Sakura had constructive knowledge of County Seat's

---

[4] County Seat briefly challenges the propriety of mentioning the title search, alleging that the trial court must have misunderstood the law by believing that Sakura could "become a good faith purchaser just by conducting a title search prior to the sale." Br. of Appellant at 24. We disagree that mentioning the title search reflects a misunderstanding of the law. The trial court was tasked with determining whether Sakura conducted due diligence, and the title search—regardless of its significance—formed part of Sakura's inquiry.

ongoing possession of the Premises. We need not address the caselaw and will proceed assuming *arguendo* that Sakura had knowledge of such possession.

[18] County Seat argues that Sakura—charged with knowledge of County Seat's ongoing possession of the Premises—unreasonably relied on Lozanovski's representation that no third party had a possessory interest or a tenancy interest. According to County Seat, relying on the representation "was akin to ignoring the scattered feathers and trusting the fox's report on the henhouse." Br. of Appellant at 20. County Seat contends that Sakura should have made "further inquiry in the full month that passed" between April 30, 2019—on which date the lease purportedly expired—and the closing on May 31, 2019. *Id.* at 22.

[19] Critically, the trial court determined that County Seat's ongoing possession was not inconsistent with a lessee wrongfully holding over past its lease term: "[N]o evidence exists to suggest that Sakura knew or should have known that County Seat . . . was anything more than a holdover tenant . . . ." Appellant's App. Vol. II at 8. Thus, the trial court implicitly found that, under the totality of the circumstances, a reasonably prudent purchaser would not have conducted further inquiry—*i.e.*, a reasonably prudent purchaser would have, at most, held a belief that it needed to evict a tenant holding over, not explore possible fraud.

[20] Ultimately, the court found that Sakura—even with constructive knowledge of County Seat's ongoing possession—conducted due diligence under the totality of the circumstances. County Seat asks us to disturb this factual finding and rely on caselaw to conclude that Sakura's actions were unreasonable as a matter

of law. However, the law provides a totality-of-the-circumstances test, a fact-intensive undertaking. The law entrusts this test to the fact-finder. We have discerned "no facts . . . found which are sufficient as a matter of law to impute knowledge . . . ." *Mishawaka-St. Joseph Loan & Tr. Co. v. Neu*, 196 N.E. 85, 91 (Ind. 1935) (reiterating that constructive knowledge "is a question of fact").

[21] Moreover, we hasten to note that the recording statutes are neutral, favoring neither a purchaser nor a lessee. Indeed, although not the case here, we can think of instances where a lessee could conceivably use a recording statute as a shield in an attempt to avoid an ongoing obligation under the terms of an unrecorded lease. Nevertheless, these types of cases will naturally turn on evidence involving the nature and extent of the inquiry about the interests and characteristics of a given property. Of course, as is the case here, the party challenging good faith will contend that further inquiry should have been conducted—*i.e.,* the purchaser should have turned over one more proverbial stone before the fact-finder could find that the due diligence exercised by the purchaser was reasonable. Ultimately, however, it is the fact-finder who determines under the totality of the circumstances whether the purchaser acted reasonably in any particular case. Certainly, the easiest way to avoid this type of fact-sensitive litigation is to do what the law requires, which is to timely record the lease. *See* I.C. § 32-31-2-1.

[22] Here, the trial court, as fact-finder, considered the totality of the circumstances. It found that Sakura undertook the inquiry of a reasonably prudent purchaser, acquiring the Premises in good faith. The evidence supports this finding.

Indeed, we cannot say it was clear error for the court to find that Sakura's efforts—touring the Premises, conducting a title search, and obtaining representations about lease rights—were sufficient under the circumstances to qualify as a good-faith purchaser.

[23] All in all, the evidence supports the challenged finding, and the findings support the judgment. We are not left with a definite and firm conviction that the court made a mistake. Adhering to our well-settled standard of review, we affirm.

[24] Affirmed.

Crone, J., and Altice, J., concur.