

**ATTORNEYS FOR APPELLANT**

Nicholas K. Kile
Mark J. Crandley
Hillary J. Close
Barnes & Thornburg, LLP
Indianapolis, Indiana

David M. Austgen
Austgen Kuiper Jasaitis P.C.
Crown Point, Indiana

**ATTORNEY FOR APPELLEES**

Stephen R. Buschmann
Thrasher Buschmann & Voelkel, P.C.
Indianapolis, Indiana

# I N  T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Town of Cedar Lake, Indiana, <br><br> *Appellant-Respondent,* <br><br> v. <br><br> Certain Cedar Lake 2014 Annexation Territory Landowners, <br><br> *Appellees-Petitioners.* | October 11, 2017 <br><br> Court of Appeals Case No. 45A03-1703-MI-589 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Calvin D. Hawkins, Judge <br><br> Trial Court Cause No. 45D02-1510-MI-20 |

**Bradford, Judge**

# Case Summary[1]

Appellant-Respondent the Town of Cedar Lake, Indiana ("the Town"), appeals from the trial court's setting aside of the annexation of approximately 2800 acres ("the Annexation Territory") in Lake County. In 2014, the Town enacted an ordinance to annex the Annexation Territory, and Appellees-Petitioners Certain Cedar Lake 2014 Annexation Landowners ("the Remonstrators") petitioned to set aside the annexation. The parties agree that the only issue of contention was whether the Town established that the Annexation Territory was "needed and can be used by the municipality for its development in the reasonably near future" as required by Indiana Code 36-4-3-13(c).

Following a bench trial, the trial court set aside the annexation, concluding that the proposed annexation did not satisfy the "needed and can be used" standard. The Town argues that (1) we should review the annexation ordinance at issue to determine if has a "rational basis" rather than review the trial court's judgment for clear error; (2) the trial court improperly failed to give its legislative judgment any deference and applied, essentially, an incorrect *de novo* standard of review; and (3) the trial court improperly applied the "needed and can be used" standard. Because we conclude that the trial court's judgment must be reviewed only for clear error, the trial court did not employ an incorrect

---

[1] We heard oral argument in this case on September 26, 2017. We wish to commend counsel on both sides for the high quality of their oral advocacy.

legal standard, and the trial court's judgment was not otherwise clearly erroneous, we affirm.

# Facts and Procedural History

[3]     In the early 1900's, the Town originated as a vacation spot for Chicagoans with "a little bit of money[,]" who patronized the hotels on the lake that eventually gave the Town its name. Tr. Vol. II p. 14. The Great Depression brought decline, and, in the 1960's a group of residents decided to incorporate the Town "and try to reclaim its glory[,]" which finally occurred in October of 1968. Tr. Vol. II pp. 14–15. Over the past forty years or so, Lake County's population has steadily migrated from the northern part of the county to the southern, where the Town is located. Currently, the Town's borders include a section of U.S. Highway 41, which runs north-south a short distance west of the Town's center. The Town's population increased by approximately 25% between 2000 and 2010. The 2010 census determined that the Town's population was 11,560.

[4]     In November of 2014, the Town adopted Ordinance 1212, proposing the annexation of the Annexation Territory, consisting of 232 parcels and 2795 acres. On June 2, 2015, the Town adopted Ordinance 1212A and resolution 1228B, providing for the annexation of the Annexation Territory and approving a fiscal plan, respectively. The fiscal plan contained no information regarding specific development in the Annexation Territory but did project a net increase in tax revenues to the Town of more than $350,000 per year. On August 28,

2015, the Remonstrators, consisting of owners of 185 of the 232 parcels in the Annexation Territory, filed their remonstrance against the annexation.

[5]     On January 5, 2017, the trial court held a bench trial on the remonstrance. The Town introduced evidence regarding five major projects that could potentially add additional economic development in the Annexation Territory in the future. First, Indiana and Illinois have proposed construction of the "Illiana Toll Road," connecting Interstates 55 and 65, with the intersection of the toll road with U.S. 41 occurring within the Annexation Territory ("the Toll Road Project"). Second, the Northern Indiana Commuter Transportation District is proceeding with plans to extend the South Shore commuter rail line to Dyer, which would allow access to commuter rail service to Chicago at a point approximately a twenty-minute drive from the Annexation Territory ("the Commuter Rail Project"). Third, Amazon has announced a new warehouse in Monee, Illinois, the site of which is approximately one half-hour from the Town, significantly larger than an Amazon warehouse in Joliet, Illinois, which employs 1500 persons ("the Amazon Project"). Fourth, the Great Lake Basin Railroad is planning an extension of its freight line, with the proposed route running parallel to the proposed Toll Road Project ("the Freight Rail Project"). Fifth, planning continues for a "South Suburban Airport" to serve as a third major airport for the Chicago metropolitan area, which would be in nearby Peotone, Illinois, and could spur growth in the annexation area ("the Airport Project").

[6] The Town presented testimony that the planning for future development should be occurring now, regardless of when actual construction begins. The Town purchased a water utility and invested approximately $1,000,000.00 to extend water mains to the edge of the Annexation Territory and has studied the extension of sewer service to the Annexation Territory and plans to begin construction as soon as annexation occurs. The Town, however, did not introduce evidence that any developers have expressed an interest in developing land in the Annexation Territory.

[7] The owners of approximately 40% of the land in the Annexation Territory testified at trial and indicated that none of them had been approached by any developer. Instead, several landowners have purchased land from developers for agricultural use. The President of the Town Council testified that he and the rest of the council had no objection if farming continued in the Annexation Territory for the next ten or twenty years and that the Town knew of no development proposals in the Annexation Territory for the next three to five years.

[8] On February 21, 2017, the trial court issued its written judgment, which included the following relevant findings of fact and conclusions:

> **FINDINGS OF FACT**
>    1. In November, 2014, the Town of Cedar Lake adopted Ordinance 1212 proposing to annex certain land that is adjacent to the Town. In conjunction with that Ordinance the Town of Cedar Lake also adopted Resolution 1128, which was a Fiscal Plan dated November 12, 2014. (Ex 1)

2. The 2014 Annexation Territory consists of 232 parcels of property totaling 2795 acres, most of which is used for agricultural purposes.

3. On January 20, 2015, the Town of Cedar Lake adopted Resolution 1128A amending the Fiscal Plan by a document dated January 19[,] 2015. (Ex B, Ex 2)

4. On June 2, 2015, the Town of Cedar Lake adopted Ordinance 1212A annexing the 2014 Annexation territory together with Resolution 1128B, approving an amended fiscal Plan dated May 22, 2015. (Ex A, Ex C)

5. On June 6, 2015, the Town of Cedar Lake caused notice of the passage of Ordinance 1212A to be published.

6. On August 28, 2015, Certain Cedar Lake 2014 Annexation Territory Landowners, the Petitioners, owning 185 of the 232 parcels in the 2014 Annexation Territory (79.7%) filed their remonstrance against the annexation.

7. On December 7, 2015, this Court entered its Order certifying the sufficiency of the remonstrance petitions.

8. The Court held a hearing on the remonstrance on January 5, 2017. The Court heard evidence and was presented with a Stipulation from the parties.

9. The Town of Cedar Lake created three Fiscal Plans respectfully dated November 12, 2014 (Ex 1); January 19, 2015 (Ex 2) and May 22, 2015 (EX C) each of which projected costs and revenues for the succeeding five (5) year period. Each of the Plans projected that the costs of government services such as police protection, fire and EMS protection would increase as development occurred. The projected costs and revenues over the five (5) year period make no provision for any significant growth in revenues or costs of services that would be expected if the 2014 Annexation Territory was to be developed during that period.

10. In addition the Town of Cedar Lake's amended annexation ordinance delayed the effective date of the annexation for three years, thus establishing that the Town of Cedar Lake did not need and could not use the 2014 Annexation Territory for its development by the Town of Cedar Lake for the next three years. (Ex C)

11. The Fiscal Plan granted the "agricultural exemption" for properties zoned as agricultural land under Ind. Code §36-4-3-4.1, which would exempt such properties from the additional municipal taxes until such time as the properties were rezoned. Despite this exemption, the Fiscal Plan showed that as a result of the Annexation the Town of Cedar Lake would receive an estimated $350,000 in additional tax revenues, exclusive of any additional utility charges. The Petitioners presented evidence that for those that would pay the municipal rates, the increased taxes would be significant. (Ex C)

12. The Town of Cedar Lake asserted that the construction of the Illiana Tollway, which had a proposed route through the 2014 Annexation Territory would create development in the Annexation Territory. The Tier I and Tier II Environmental Impact Studies on the portion of the Tollway running through Illinois have been declared invalid by the United States District Court, Southern District of Illinois and the Governor of the State of Illinois has stated that Illinois will not spend money to advance this project. (Stipulation 4, Ex T). The construction of the Iliana Tollway in this location is speculative and will not lead to development in the 2014 Annexation Territory in the reasonably near future.

13. The Town of Cedar Lake provided evidence of other regional projects that would promote development in Northwest[] Indiana. These projects include:

   A. The West Lake Corridor Project NICTD railway is projected to become operational across Northern Lake County, with a spur running to Dyer, Indiana by 2023. While this project if completed on time, would benefit Northwest Indiana, there was no evidence that it would result in development in the 2014 Annexation Territory in the reasonably near future.

   B. The State of Illinois is considering the construction of a South Suburban Airport in Illinois. (Ex S, Ex W). Pursuant to the website of the Illinois Department of Transportation, this is an ongoing process. The completion of this project at this location is speculative

and the Town of Cedar Lake provided no evidence that this proposal would result in development in the 2014 Annexation Territory in the reasonably near future.

C. Amazon has announced plans for a fulfillment center in Monee, Illinois. While this project could potentially have a positive impact for Northwest Indiana, the Town of Cedar Lake provided no evidence this project would result in development in the 2014 Annexation Territory in the reasonably near future.

D. The Great Lakes Basin Transportation Inc. proposed to construct a freight rail line emanating from Chicago and running east, with a proposed route that could run through the 2014 Annexation Territory. (Ex S, Ex Z). As noted on the Great Lakes Basin website, the precise alignment of the railroad has not been determined and alternative routes for part or all of the project will be considered. A primary factor in the route selection is to provide a one to two-mile buffer zone between the railroad and towns along the route. (Ex Z). The construction of this railroad in or near the Annexation Territory is speculative and the Town of Cedar Lake provided no evidence this project would result in development in the 2014 Annexation Territory in the reasonably near future.

14. The Town of Cedar Lake provided evidence from several comprehensive plans that development is working its way South on US 41, and is projected to occur in the 2014 Annexation Territory over the next couple of decades; However, the Town of Cedar Lake provided no evidence this projected development would occur in the 2014 Annexation Territory in the reasonably near future.

15. The Town of Cedar Lake presented evidence of building permits over the last 7 years on US 41 within the current Town limits. (Ex 0). Of the 44 permits contained on that list, few appeared to be new construction. The Town of Cedar Lake also presented evidence of building permits in other areas within the Town limits. (Ex N) While some are new construction, most

were not.  The Town of Cedar Lake presented no evidence of construction in the 2014 Annexation Territory and the Petitioners testified that there had been little to no development occurring in the 2014 Annexation Territory.  The "Development" maps (Ex R) confirmed that testimony.

16.  The Town of Cedar Lake presented a number of reasons that it desired to annex the Annexation Territory, including:

> A. Per the Fiscal Plan, the annexation would produce additional tax revenues for the Town.  (Ex 2, pg 5).
>
> B. The desire to control zoning outside of the Town limits, to regulate anticipated long term growth.
>
> C. The desire to control sewer service outside the Town limits although the Town of Cedar Lake currently has an agreement with the Town of Lowell to have the exclusive right to place sewers in the 2014 Annexation Territory North of 159th Street.  (Ex 5, Ex 6, & Ex 7).
>
> D. The desire to expand its sewer service territory into areas South of 159th Street which areas have previously been assigned by agreement to the Town of Lowell; even though the Town of Lowell presented evidence that it would provide sewer service in that area, if requested, but no one had made such a request.
>
> E. The desire to protect water service areas, although:
>
>> (1) There was no evidence that the Town of Cedar Lake had any intent to attempt to provide water service to the 2014 Annexation Territory unless development occurs;
>>
>> (2) The Town of Cedar Lake has the authority to extend water service outside its corporate boundaries and into the 2014 Annexation Territory anytime it wishes, thus establishing water service control in the area.

17.  Petitioners owning or holding long term leases on farmland which comprise approximately 40% of the 2014 Annexation Territory provided evidence that they and their families intend to continue farming that land for the foreseeable

future. None of those Petitioners had been approached by developers to acquire their land for development. Dale Huseman provided evidence that he had acquired land to be used in his farming operations from developers in and adjacent to the 2014 Annexation Territory.

18. The Town of Cedar Lake presented evidence that a piece of farmland in the 2014 Annexation Territory on US 41 near the southern boundary of the Territory was listed for sale and that without zoning control the property could be developed in a less desirable way. The Petitioners presented evidence that the particular parcel had been for sale for at least a decade and the same owner had sold land just north of that parcel to Paul Kleine for use as farmland.

19. The Town of Cedar Lake also offered as evidence of potential development that Frank Shilling owned 160 acres adjacent to, but outside of the 2014 Annexation Territory, which he planned to develop if the annexation took place. (Ex 4, Response No. 8). The Petitioners presented evidence that Frank Shilling had sold some of the property to an adjoining landowner; that Frank Shilling was negotiating the sale of 120 acres of the property to a family for farming; and the parcel of property was located at the end of an FAA certified landing strip, thus limiting its usefulness for development.

20. The Town of Cedar Lake expressed, through the town council President that it would not use eminent domain for development purposes in the 2014 Annexation Territory and that it would allow the farmers in the area to self-determine when and whether to develop their farmland.

21. The Town of Cedar Lake presented no specific plans for development within the 2014 Annexation Territory.

22. The Town of Cedar Lake identified no developers who had expressed any interest in developing the agricultural land in the 2014 Annexation Territory.

23. None of the Town of Cedar Lake's expressed reasons for desiring to annex the 2014 Annexation Territory provided a basis to establish that the 2014 Annexation Territory is needed and

can be used by the Town of Cedar Lake for its development in the reasonably near future.

24. The Petitioners introduced evidence which established that the 2014 Annexation Territory is not likely to be developed in the reasonably near future.

25. To the extent any of these Findings of Fact are deemed Conclusions of Law they are hereby incorporated as additional Conclusions of Law. To the extent any of the Conclusions of Law are deemed Findings of Fact, they are hereby incorporated as additional Findings of Fact.

**PRINCIPLES OF LAW**

1. Annexations are governed by IC 36-4-1 et seq. More specifically a remonstrance proceeding, such as herein, is governed by IC 36-4-3-13.

2. The Respondent, the Town of Cedar Lake, Indiana, has the burden of proving its case of annexation pursuant to IC 36-4-3-13.

**ANALYSIS**

In this case the parties have stipulated that the requisites of IC 36-4-2-13 (b) have not been met; moreover, the parties have stipulated that the requisites of Ind. Code § 36-4-2-13(d) have been met. And the parties have stipulated the 2014 Annexation Territory is at least one quarter (1/4) contiguous to the boundaries of the Town of Cedar Lake pursuant to IC 36-4-13(c)(1).

The Town of Cedar Lake has the burden of establishing that the 2014 Annexation Territory is needed and can be used by the Town of Cedar Lake for its development in the reasonably near future.

The herein proceeding has brought into being the dialectic tension of possibility versus probability. Those possibility/probability dialectics were the third major Chicagoland airport (Peotone), the Illiana Tollway, an Amazon base of operations in nearby Illinois and the construction of a freight rail line from eastern Illinois projected to go through a portion of western Indiana. Each of these projects is possible; nevertheless, notwithstanding the fact that funding has been allocated for same the probability of any of these projects coming into being---even

within the next decade---is remote. For example, the Peotone airport site has been discussed for at least two decades. **Abell v City of Seymour**, 275 N.E.2d[ ]547 (1971).

In the herein case there was no evidence that the Town of Cedar Lake had any major project for the proposed annexed territory other than for future planning for potential projects, potential programs and potential trends for the area in question. Again, the possibility/probability dialectic. **Town of Fortville v Certain Fortville Annexation Territory Landowners**, 51 N.E. 3rd 1195 (2016).

The Town of Cedar Lake provided no evidence that it had any plans for development of the 2014 Annexation Territory in the reasonably near future. Furthermore, the Petitioners provided evidence that no developers have contacted them regarding development in the said territory and that developers have been selling land in and adjacent to the 2014 Annexation Territory to farmers to be used for farming purposes.

Consequently, this Court can only find, pursuant to the requisite statutes, that there is no probative evidence supporting the Town of Cedar Lake's allegations that the 2014 Annexation Territory is needed and can be used by the Town of Cedar Lake for its development in the reasonably near future.

## CONCLUSIONS OF LAW

Based on the foregoing findings of fact, the Court's conclusions of law are:

1. The proposed annexed territory cannot be used by the Town of Cedar Lake in the reasonably near future.

2. The Town of Cedar Lake has not met its burden to annex the proposed territory pursuant to statutory requisites. IC 36-4-3-5 et seq.

## ORDER

1. The annexation of the 2014 Annexation Territory as provided in Ordinance 1212-A shall not take place; and

2. The Town of Cedar Lake may not make further attempts to annex the 2014 Annexation Territory or any part thereof during the four (4) years after the later of (A) entry of this Judgment; or (B) the date of final disposition of all appeals to a higher court,

unless the annexation is petitioned under Ind. Code § 36-4-3-5 or
5.1.

Order pp. 2-10.

# Discussion

## I. Background: Annexation Law in Indiana, Generally

[9]     Annexations are governed by Indiana Code chapter 36-4-3, "Municipal

Annexation and Disannexation[.]"  Remonstrances are governed by Indiana

Code sections 36-4-3-11 through -15, and the issues to be determined by the trial

court are set out in section 36-4-3-13.  A municipality subject to chapter 36-4-3[2]

has the burden of proving that the elements of Indiana Code subsections 36-4-3-

13(b) or (c) and 36-4-3-13(d) have been satisfied.  The sole issue in this appeal is

whether the trial court properly found that the Town failed to meet its burden of

establishing the elements of Indiana Code subsection 36-4-3-13(c), *i.e.*, "[t]hat

the territory sought to be annexed is … needed and can be used by the

municipality for its development in the reasonably near future."[3]

> "The framework of Indiana's annexation laws has long featured
> three basic stages:  (1) legislative adoption of an ordinance
> annexing certain territory and pledging to deliver certain services

---

[2] Indiana Code section 36-4-3-1 provides that "[t]his chapter applies to all municipalities except consolidated cities."  Indianapolis is the only consolidated city in Indiana.

[3] During the pendency of this case, Indiana Code section 36-4-3-13 has been amended twice—the first amended statute was effective from July 1, 2015, to June 30, 2016, and the second became effective on July 1, 2016.  Although subsection (c) has been altered by the amendments, the requirement that municipality establish that the land sought to be annexed is "needed and can be used by the municipality for its development in the reasonably near future" remains the same in all three versions.

within a fixed period of time; (2) an opportunity for remonstrance by affected landowners; and (3) judicial review." *City of Carmel v. Steele*, 865 N.E.2d 612, 615 (Ind. 2007) (citation omitted). Although the applicable statutes have undergone several revisions over the years, certain general propositions of law have long applied. *Id*. at 615–16. For instance, annexation statutes invest in the governing body of a municipality the exclusive authority to annex territory. *Id*. at 616. And as a legislative function annexation becomes a question subject to judicial intervention only upon review as provided by statute. *Id*.

Because a municipality's authority to annex territory is defined by statute, the court's role is to determine whether the municipality has exceeded its statutory authority, and whether it has met the conditions imposed by the statute. *Rogers v. Mun. City of Elkhart*, 688 N.E.2d 1238, 1239–40 (Ind. 1997). Although the burden of pleading is on the landowner, "the burden of proof is on the municipality to demonstrate compliance with the statute." *Id.* The court sits without a jury and enters judgment on the question of annexation after receiving evidence and hearing argument from both sides. Ind. Code § 36-4-3-12.

Once the trial court has decided whether to approve an annexation ordinance, either the municipality or the landowner may seek appellate review. Where, as here, the trial court upon its own motion enters special findings of fact and conclusions of law, we apply the standard of review set forth in Indiana Trial Rule 52. *Chidester v. City of Hobart*, 631 N.E.2d 908, 909 (Ind. 1994). We review issues of fact for sufficiency of the evidence and look to the record only for inferences favorable to the judgment. *Id.* at 910. We will not set aside findings or judgments unless clearly erroneous. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997) (quotation and citation omitted). And a "judgment is clearly erroneous if it applies the wrong legal standard to properly found facts." *Id.* (citation omitted). In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the

evidence must leave it with the firm conviction that a mistake has been made. *Id.* (citation omitted).

*Fortville*, 51 N.E.3d at 1197–98 (footnote omitted).

[10] Moreover, because the Town had the burden to establish compliance with the requirements of Indiana Code section 36-4-3-13, it is appealing from a negative judgment.

> A judgment entered against a party who bore the burden of proof at trial is a negative judgment. *Garling v. Ind. Dep't of Natural Res.*, 766 N.E.2d 409, 411 (Ind. Ct. App. 2002). On appeal, we will not reverse a negative judgment unless it is contrary to law. *Mominee v. King*, 629 N.E.2d 1280, 1282 (Ind. Ct. App. 1994). To determine whether a judgment is contrary to law, we consider the evidence in the light most favorable to the appellee, together with all the reasonable inferences to be drawn therefrom. *J.W. v. Hendricks Cnty. Office of Family & Children*, 697 N.E.2d 480, 482 (Ind. Ct. App. 1998). A party appealing from a negative judgment must show that the evidence points unerringly to a conclusion different than that reached by the trial court. *Mominee*, 629 N.E.2d at 1282.

*Smith v. Dermatology Assocs. of Fort Wayne, P.C.*, 977 N.E.2d 1, 4 (Ind. Ct. App. 2012).

## II. Our Standard of Review

### *"Clearly Erroneous" v. "Rational Basis"*

[11] One issue that we must resolve at the outset is the overall standard of review to be applied. The Town argues that the trial court did not apply the proper standard of review because it did not specifically explain how the proposed annexation was "'arbitrary or capricious; that is, the board or commission has

taken willful and unreasonable action without consideration and in disregard of the facts or circumstances of the case.'"  Appellant's Br. p. 23–24 (quoting *Bd. of Comm'rs of Cnty. of Vanderburgh v. Three I Props.*, 787 N.E.2d 967, 976 (Ind. Ct. App. 2003)).  The town urges us to apply this same "rational basis" standard of review to evaluate the annexation ordinance at issue in this case.

[12]  We conclude that the standard stated above, which was drawn from a zoning case, is the improper standard to be used in a remonstrance case.  In *Three I Properties*, the court elaborated on the standard to be used in reviewing a zoning ordinance:

> Rezoning is a legislative process.  [*Bryant v. Cnty. Council of Lake Cnty.*, 720 N.E.2d 1, 5 (Ind. Ct. App. 1999), *trans. denied*.]  There is no provision for an appeal of the Board's denial of a zoning ordinance.  *City of Anderson v. Associated Furniture & Appliances, Inc.,* 398 N.E.2d 1321, 1323 (Ind. Ct. App. 1979).  The procedure for review of such legislative action is to bring a suit for declaratory judgment or other similar attack.  *Id.*  By this process, a party may seek review of the action to determine constitutionality, procedural soundness or whether it was an arbitrary, capricious or unreasonable action.  *Id.*  Because the action is "legislative" and not "judicial" in nature, the reviewing court is much more limited in its scope of review.  *Id.*
>
> Generally, whether to rezone a particular piece of property is a matter left to the sound discretion of the local legislative body.  *Bryant,* 720 N.E.2d at 5.  We will not intervene in the local legislative process as long as it is supported by some rational basis.  *Id.*  The courts may reverse a board or commission's decision regarding rezoning only if it is arbitrary or capricious; that is, the board or commission has taken willful and unreasonable action without consideration and in disregard of the facts or

circumstances of the case. *Ogden v. Premier Properties, USA, Inc.,* 755 N.E.2d 661 (Ind. Ct. App. 2001).

787 N.E.2d at 976.

[13] This, however, is a remonstrance case, in which we are not directly reviewing the annexation ordinance. A statutory avenue for a court challenge to a proposed annexation exists, which means the Town is challenging *that* decision, not the annexation ordinance itself. In summary, use of a "rational basis" standard of review is inappropriate in remonstrance cases because it does not involve the direct review of a legislative act. Instead, we will apply the clearly erroneous standard (as mandated by the Indiana Supreme Court in *Fortville*) in a straightforward manner,[4] keeping in mind, of course, that the Town's judgment in annexation matters is entitled to be shown some deference.

## III. Whether the Trial Court's Judgment was Clearly Erroneous

[14] In order to prevail on appeal, then, the Town must establish that the trial court's conclusion that the Town failed to carry its burden to establish that the Annexation Territory was needed and could be used in the reasonably near future was clearly erroneous. As mentioned, this court's review of the trial court's judgment is limited to determining whether it committed clear error.

---

[4] The binding precedent of *Fortville* requires us to review the trial court's judgment for clear error, but it is also worth noting that research has uncovered no Indiana cases from any court reviewing a remonstrance using a "rational basis" standard or suggesting that the trial court in a remonstrance should have used that standard.

[15]     The Town does not argue that there is insufficient evidence to sustain the trial court's findings; rather, it claims that the trial court did not apply the proper legal standard, *i.e.*, show the proper amount of deference to the Town's legislative judgment. The Town is correct that a trial court in a remonstrance owes substantial deference to the municipality's judgment regarding the proposed annexation. As the Indiana Supreme Court has stated,

> "annexation 'is essentially a legislative function'" and that "courts play only a limited role in annexations and must afford the municipality's legislative judgment substantial deference." *In re Annexation of Certain Territory to City of Muncie*, 914 N.E.2d 796, 801 (Ind. Ct. App. 2009) (citing *City of Fort Wayne v. Certain Southwest Annexation Area Landowners*, 764 N.E.2d 221, 224 (Ind. 2002)). But that does not mean a trial court's role is to sustain blindly an annexation decision simply because it is the product of legislative decision-making. Rather, the court is obligated to ensure the annexing municipality has "not exceeded its authority and that the statutory conditions for annexation have been satisfied." [*Chidester v. City of Hobart*, 631 N.E.2d 908, 910 (Ind. 1994)]; *accord Bradley v. City of New Castle*, 764 N.E.2d 212, 216 (Ind. 2002) ("The trial court's role is to decide whether the municipality has operated within its authority and satisfied the statutory conditions for annexation."); *City of Aurora*, 165 N.E.2d at 145 ("The court is … simply given the power to determine, in the event there is a remonstrance filed, whether certain conditions imposed by the statute are met."). The judgment of the court simply establishes the fact that the conditions of the statute necessary to overcome a remonstrance have or have not been met; and if they have met the statutory requirements then the trial court is bound to approve annexation of the affected territory. *Chidester*, 631 N.E.2d at 910.

*Fortville*, 51 N.E.3d. at 1198.

[16] We conclude that the record contains no solid basis for the Town's assertion beyond the fact that the Town lost. Although the trial court did not explicitly state the standard it was using to decide the case, it certainly did not state that it was reviewing the matter *de novo*. It is difficult to imagine what *de novo* would even mean in this context, as the trial court is not really "reviewing" anything in a remonstrance. Pursuant to the relevant statutes, the trial court, sitting without a jury, hears and determines the remonstrance and enters "judgment on the question of the annexation according to the evidence that either party may introduce." Ind. Code § 36-4-3-12. In other words, a remonstrance is, in essentials, just like any other bench trial, where the fact-finder hears evidence, finds facts, applies the law to those findings, and enters judgment. And, while the *Fortville* Court clarified that the trial court evaluating a remonstrance should show substantial deference to the municipality's legislative judgment, there is no requirement that this be stated explicitly. The Town has failed to establish that the trial court did not show sufficient deference to its legislative judgment.

[17] That said, we have little trouble concluding that the record contains more than enough evidence to support the trial court's findings that the Toll Road Project, the Commuter Rail Project, the Amazon Project, the Freight Rail Project, and the Airport Project were either more in the realm of speculation than reality at this time, not expected to be completed in the near future, or would have undetermined effect on the Annexation Parcel even upon completion. Moreover, the Remonstrators produced evidence tending to prove that no developer had yet expressed interest in the Annexation Territory or purchased

any land; some land had, in fact, been purchased by farmers from developers who had apparently abandoned whatever plans they once had for development; and the Town could not identify any specific development expected to occur in the Annexation Territory within the next three to five years.[5] We conclude that the above evidence is sufficient to sustain the trial court's conclusion that the Town failed to establish that the Annexation Territory is needed and could be used in the reasonably near future.

[18] The Town points to evidence (1) that it has invested significant amounts of money already in extending services to the Annexation Territory, (2) of migration from northern to southern Lake County, (3) comparing and contrasting the Town's situation to those of other similar municipalities, and (4) that the major projects could mean significant development in the Annexation Territory. While it may be true that the above would provide a "rational basis" for the proposed annexation in this case, we have already concluded that this is a wholly inappropriate standard for remonstrance cases. The Town's argument is nothing more than an invitation for this court to reweigh the evidence, which we will not do. *See, e.g.*, *Chidester*, 631 N.E.2d at 910 ("We review issues of fact for sufficiency of the evidence and look to the record only for inferences favorable to the judgment."). In order to prevail on appeal, the Town was

---

[5] At oral argument, the Remonstrators seemed to suggest that a municipality seeking to annex land should have to establish that some specific development is expected to occur within three to five years on the land in question. We decline the Remonstrators' seeming invitation to impose any such requirement when each case has unique facts.

required to establish that "the evidence points unerringly to a conclusion different than that reached by the trial court[,]" *Smith*, 977 N.E.2d at 4, which it has failed to do.

# Conclusion

[19] We conclude that in remonstrance cases, this court should review the trial court's ruling for clear error and not evaluate the annexation ordinance for a rational basis. Reviewed for clear error, the Town has failed to establish that (1) the trial court employed the wrong legal standard and (2) the trial court's judgment was otherwise clearly erroneous.

[20] We affirm the judgment of the trial court.

May, J., and Barnes, J., concur.